**In re I.J.**

**Appeal of Department of Human Services.**

Superior Court of Pennsylvania.

Argued Sept. 17, 2008.
Filed March 23, 2009.

Cynthia N. Keller, Philadelphia, for appellant.

Lester R. Zipris, Philadelphia, for appellee. (Submitted)

BEFORE: BENDER, DONOHUE and FREEDBERG, JJ.

OPINION BY DONOHUE, J.:

¶ 1 The Philadelphia Department of Human Services ("DHS") appeals from the order of court dated September 18, 2007 denying its Petition for Goal Change to Adoption and Involuntary Termination of Parental Rights of S.M. ("Mother") and D.J. ("Father"), the parents of I.J.[1] For the reasons that follow, we reverse and remand for further proceedings consistent with this decision.

¶ 2 DHS's involvement with Mother began in 2004 in connection with her two older children. At the time of I.J.'s birth on September 30, 2005, Mother had voluntarily placed her oldest child with a relative, and her second oldest child, L.M., had been adjudicated dependent and was living with a foster family. Upon I.J.'s birth, DHS filed a petition for a restraining or-

---

1. Mother and Father never married or lived together. The trial court did not rule on the request for a goal change to adoption.

der to have her immediately placed in foster care, alleging that Mother could not care for I.J. because of physical limitations, mental health issues,[2] and an inability to care for her other two children. DHS's petition also alleged that Father was unable to care for I.J., although the substance of those allegations is not clear from the record because the copy of the petition contained in the record is illegible.

¶ 3 The trial court granted the restraining order on October 3, 2005 and I.J. was placed in a foster home. On November 4, 2005, the trial court granted DHS' petition for dependency for I.J. A few weeks before the dependency adjudication for I.J., DHS created a Family Service Plan ("FSP") which outlined goals for Mother to meet regarding both I.J. and L.M.[3] These goals were to (1) learn and understand age-appropriate behavior and expectations for children; (2) provide adequate and safe living conditions; (3) stabilize mental health issues; (4) maintain regular visitation; (5) and to attend Family School with L.M. This FSP did not include goals for Father, although DHS subsequently revised it to assign him the same goals as those of Mother, except that Father was also required to submit to a medical evaluation for a seizure condition. Through individual service plans ("ISPs"), DHS further required Mother to obtain employment and create a monthly budget and Father to obtain employment.

¶ 4 On December 13, 2005, the trial court held a dependency review hearing, at which time it decided to continue I.J.'s commitment in foster care. On June 28, 2007, DHS filed its petition to terminate parental rights, and the trial court held evidentiary hearings on the petition on July 10, 2007 and September 14, 2007. DHS presented the testimony of DHS social worker Yolanda Holmes, VOA social worker Tiffany MacIntosh, and Family Support Services social worker Clareatha McNealy. DHS also admitted into evidence a biopsychological evaluation of Mother by Ruth Kanost, Ph.D., a psychological parenting evaluation of Mother by Dr. Kathryn Woods, and a psychological evaluation of Father by Stephen Miksic, Ph.D. Mother and Father testified on their own behalves.

¶ 5 On September 18, 2007, the trial court entered an order denying DHS' petition. The trial court found that Mother and Father had demonstrated their intent to cultivate a relationship with I.J., that they had remedied or made progress in remedying some of the conditions that resulted in I.J.'s adjudication of dependency, and that as a result it was not in I.J.'s best interests to terminate the parental rights of Mother and Father at the present time. Trial Court Opinion, 4/29/08, at 25, 28, 32. This appeal followed, in which DHS contends that the trial court erred in not finding that competent and uncontradicted evidence established the statutory grounds for termination of parental rights pursuant to 23 Pa.C.S.A. § 2511.

■ ¶ 6 We begin with our standard of review. In cases involving termination of parental rights:

> our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child. We have always been deferential to the

---

2. Mother has thrombocytopenia absent radius syndrome, commonly referred to as TAR syndrome, which causes shortened arms. She also suffers from bi-polar disorder.

3. On February 7, 2006, the trial court terminated Mother's parental rights to L.M.

trial court as the fact finder, as the determiner of the credibility of witnesses, and as the sole and final arbiter of all conflicts in the evidence.

*In re S.D.T., Jr.,* 934 A.2d 703, 705–06 (Pa.Super.2007).

¶ 7 Before filing a petition for the termination of a parent's rights, the Commonwealth is required to make reasonable efforts to promote reunification between a child and her parents. *In re Adoption of R.J.S.,* 901 A.2d 502, 507 (Pa.Super.2006). The Commonwealth's obligation in this regard is not indefinite, however, because in addition to the parents' interests the Commonwealth must also respect the child's right to a stable, safe, and healthy environment. *Id.; In re Adoption of M.E.P.,* 825 A.2d 1266, 1276 (Pa.Super.2003). When reasonable efforts at reunification have failed, then the child welfare agency must work towards terminating parental rights and placing the child with adoptive parents. *In re G.P.-R,* 851 A.2d 967, 976 (Pa.Super.2004) (citing *In re B.L.L.,* 787 A.2d 1007, 1016 (Pa.Super.2001)). As we have repeatedly acknowledged, "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *M.E.P.,* 825 A.2d at 1276; *R.J.S.,* 901 A.2d at 507.

¶ 8 Termination of parental rights is governed by statute. 23 Pa.C.S.A. § 2511. For purposes of this appeal, the statute provides in relevant part as follows:

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

(b) Other considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on

the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. 23 Pa.C.S.A. § 2511.

¶ 9 Under section 2511, the trial court must engage in a bifurcated process. The initial focus is on the conduct of the parent. *See, e.g., In re A.L.D.*, 797 A.2d 326, 339 (Pa.Super.2002). The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds delineated in section 2511(a). If the trial court determines that the parent's conduct warrants termination under section 2511(a), then it must engage in an analysis of the best interests of the child analysis under section 2511(b), taking into primary consideration the developmental, physical, and emotional needs of the child. *R.J.S.*, 901 A.2d at 508.

¶ 10 In this case, DHS sought termination of Mother's and Father's parental rights under subsections 2511(a)(1), (a)(2), (a)(5), and (a)(8). Accordingly, we shall examine the evidence proffered by the parties in connection with each of these subsections of section 2511(a), beginning with subsection 2511(a)(1). A court may terminate parental rights under subsection 2511(a)(1) when the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least six months prior to the filing of the termination petition. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super.2000) (*en banc*). Although the six month period immediately preceding the filing of the petition is most critical to the analysis, the court must consider the whole history of the case and not mechanically apply the six-month statutory provision. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa.Super.2008). The trial court must examine the individual circumstances of each

case and consider all of the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination. *In re B, N.M.*, 856 A.2d 847, 855 (Pa.Super.2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005).

¶ 11 Based upon the evidence presented at the two evidentiary hearings, the trial court found that "Mother and Father's actions and efforts demonstrated a settled purpose of reunification with I.J. and a pattern of persistent attempts at performing their parental duties." Trial Court Opinion, 4/29/08, at 21. Competence evidence supports this finding. Among other things, Mother and Father attended visitation sessions. Notes of Testimony ("N.T."), 9/15/07, at 9, 73, 90, 91. Mother created a monthly budget as required by her ISP. *Id.* at 105. Father testified that he is under a doctor's care for his seizures, *id.* at 155–57, and he submitted to a mental health evaluation. N.T., 7/10/07, at 65. Father also found employment and suitable housing. *Id.* at 140–41.

¶ 12 Under subsection 2511(a)(2), DHS had the burden of proof to demonstrate that "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." Similarly, under subsection 2511(a)(5), DHS had to show that "the parent cannot or will not remedy [the conditions that led to the removal or placement of the child] within a reasonable period of time." The trial court found that DHS had not met its burden of proof with respect to either of these subsections, since both Mother and Father had made some progress towards meeting the goals and objectives set forth in the FSP and ISPs. Trial Court Opinion, 4/29/08, at 27.

¶ 13 Our review of the record provides no legal basis on which to disturb this finding, as some evidence in the record

supports the conclusion that Mother's behavior towards I.J. had improved after her parental rights to L.M. were terminated, N.T., 9/14/07, at 33–34, and that Father had made efforts to maintain his home and attend some scheduled visits with I.J. *Id.* at 106–07, 123–24, 141. We do not disagree with DHS that a substantial volume of evidence, including extensive testimony from the social workers and the professionals, supports the opposite conclusion (i.e., a lack of any significant progress by either parent). Under our standard of review, however, we must accept the trial court's factual findings if supported by competent evidence of record—even if the record could likewise support an opposite result. *In re A.L.D., Jr.,* 797 A.2d 326, 336 (Pa.Super.2002).

■ ¶ 14 DHS also invoked subsection 2511(a)(8) in its petition to terminate parental rights in this case. Under this subsection, DHS had to show only that (1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *In re C.L.G.,* 956 A.2d 999, 1005 (Pa.Super.2008) (*en banc*). The trial court found that DHS failed to meet its burden of proof on the second and third elements because "Mother and Father either remedied, or made significant strides towards remedying, several of the conditions which led to I.J.'s removal, thus making it in I.J.'s best interest to continue reunification efforts with Mother and Father." Trial Court Opinion, 4/29/08, at 28. This conclusion constitutes an error of law in at least two respects.

¶ 15 With regard to the second element, the trial court improperly conflated the statutory requirements of subsections (a)(2) and (a)(5) with those of subsection (a)(8). As this Court has repeatedly indicated, termination under subsection (a)(8) "does *not* require an evaluation of [the parents] willingness or ability to remedy the conditions that led to placement of the children." *R.J.S.,* 901 A.2d at 511 (emphasis in original); *see also In re S.H.,* 879 A.2d 802, 807 (Pa.Super.2005); *In re J.T. and R.T.,* 817 A.2d 505, 509 (Pa.Super.2003). Instead, as we recently reaffirmed in an *en banc* decision, subsection (a)(8) "requires only that the conditions continue to exist, not an evaluation of parental willingness or ability to remedy them." *C.L.G.,* 956 A.2d at 1007 (citing *S.H.,* 879 A.2d at 806).

¶ 16 As a result, the relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing. *See, e.g., R.J.S.,* 901 A.2d at 512 (finding second element of 2511(a)(8) satisfied because "the trial court did *not* conclude that Mother's present situation was such that she could assume responsibility for the care and control of her children at the time of the hearing.") (emphasis in original); *S.H.,* 879 A.2d at 806 (finding termination under 2511(a)(8) appropriate because "reunification could not be contemplated until Mother maintained a sober lifestyle in the outside community for at least one to two years."). As this Court has acknowledged:

We recognize that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary

to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen months, in which to *complete* the process of either reunification or adoption for a child who has been placed in foster care. ·

*C.L.G.*, 956 A.2d at 1005; *R.J.S.*, 901 A.2d at 513; *see also In re N.W.*, 859 A.2d 501, 508 (Pa.Super.2004); *In re G.P.-R.*, 851 A.2d 967, 976 (Pa.Super.2004); *In re B.L.L.*, 787 A.2d 1007, 1016 (Pa.Super.2001).

¶ 17 In this case, the trial court did not find that either Mother or Father had remedied the conditions that led to removal of I.J. ·To the contrary, the trial court found only that Mother and Father had remedied, or "made significant strides toward remedying," some (but by no means all) of the conditions that led to I.J.'s removal in late 2005. Such a finding is insufficient as a matter of law for purposes of the second element of subsection (a)(8). Because the record unambiguously reflects that all of the conditions have not been remedied and that reunification between I.J. and her parents remains untenable after nearly two years of foster care, we conclude that DHS met its burden of proof with regard to the second element of subsection (a)(8).

¶ 18 Turning to the third element of subsection (a)(8), DHS had the obligation to demonstrate that "termination of parental rights would best serve the needs and welfare of the child." In this regard, the trial court found that "it would be in I.J.'s best interests to grant a greater window of opportunity to Mother and Father to complete the FSP goals since they made sig-

nificant advances in the past year." Trial Court Opinion, 4/29/08, at 28. This conclusion also constitutes an error of law, since progress towards reunification is, as explained hereinabove, irrelevant to a subsection (a)(8) analysis. Given its irrelevance, a demonstration of mere progress towards reunification cannot form the basis of a "best interests" analysis under subsection (a)(8).

¶ 19 Instead, "a best interest of the child" analysis under both 2511(a)(8) and 2511(b) requires consideration of "[i]ntangibles such as love, comfort, security, and stability." *In re C.P.*, 901 A.2d 516, 520 (Pa.Super.2006). To this end, this Court has indicated that the trial court "must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *C.L.G.*, 956 A.2d at 1009. Moreover, in performing a "best interests" analysis:

> The court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. *In re Adoption of K.J.*, [936 A.2d 1128, 1134 (Pa.Super.2007)].... The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, [761 A.2d 1197 (Pa.Super.2000)]. Most importantly, adequate consideration must be given to the needs and welfare of the child. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super.2002). ·

*K.Z.S.*, 946 A.2d at 760.

¶ 20 The trial court did not complete such a "best interests" analysis for I.J. with respect to either Mother or Father. For Mother, the trial court reviewed the evidence of record regarding the relationship between I.J. and Mother, which ap-

pears to reflect that no natural parental bond exists between the two. After this review, however, the trial court reached no definitive finding as to whether any natural parental bond exists. For Father, the trial court's review of the evidence regarding parental bond produced mixed results. The testimony from DHS's witnesses indicated that no parental bond exists, but there were reports from Family School records suggesting some positive interactions between I.J. and her Father. Given these reports, the trial court concluded that it "could not discount the existence of a bond between I.J. and Father." Trial Court Opinion, 4/29/08, at 31.

¶ 21 At this point, however, the trial court's "best interest" analysis stopped for both parents. Among other things, the trial court made no findings regarding the effect on I.J. of terminating the parental rights of either Mother or Father.

¶ 22 For these reasons, we remand this case to the trial court for a comprehensive "best interests" analysis. While credibility determinations remain with the trial court, we find it noteworthy that the social workers and the professionals who testified all unanimously agreed that (1) there is little or no natural parental bond between I.J. and either Mother or Father, and (2) termination of Mother's and Father's parental rights would be in I.J.'s best interests, including to free her for adoption by her foster parents. *See, e.g.,* N.T., 7/10/07, at 61, 72; N.T., 9/14/07, at 107–08. In its opinion, the trial court acknowledged I.J. had a strong and comfortable bond with her foster mother as well as her sister L.M. (who resides with them), and that I.J. would cry whenever her foster mother tried to leave her. Trial Court Opinion, 4/29/08, at 29. As we have acknowledged, the strength of emotional bond between a child and a potential adoptive parent is an important consideration in a "best interests" analysis. *K.Z.S.,* 946 A.2d at 764.

¶ 23 In similar cases where we have found a trial court's "best interests" analysis to be lacking, we have remanded the case to the trial court for the taking of additional evidence with regard to emotional bonds and the effect of termination on the children. *See, e.g., See In re T.F. et al.,* 847 A.2d 738, 743 (Pa.Super.2004); *In re Involuntary Termination of C.W.S.M.,* 839 A.2d 410 (Pa.Super.2003). These cases have typically involved a failure to receive sufficient relevant evidence on which to make a "best interests" determination. *See, e.g., T.F.,* 847 A.2d at 743 ("We also note that the testimony presented did not separately address the effect that termination would have on each child individually."). Although the record in this case facially supports a conclusion that the best interest of I.J. would be served by termination of these parents' rights, for us to so conclude would force us to ignore the trial court's credibility determinations. This is contrary to our standard of review. Thus, we will leave to the sound discretion of the trial court whether or not the taking of additional evidence is necessary in order to complete a "best interests" analysis in this case.

¶ 24 Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.