J-S38002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE MATTER OF: A.G.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: A.A., FATHER | |
| Appellant | No. 505 MDA 2015 |

Appeal from the Decree Entered on February 26, 2015
In the Court of Common Pleas of Dauphin County
Orphans' Court at No: 43 ADOPT 2014

| IN THE MATTER OF: A.G.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: A.A., JR., FATHER | |
| Appellant | No. 506 MDA 2015 |

Appeal from the Decree Entered on February 26, 2015
In the Court of Common Pleas of Dauphin County
Orphans' Court at No: 44 ADOPT 2014

BEFORE:  WECHT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                              **FILED JUNE 22, 2015**

A.A., Jr. ("Father") appeals the February 26, 2015 decrees that terminated his parental rights to his two sons, Am.G.A. (born in December 2002) and Ag.G.A. (born in November 2004) (collectively, "Children"). After careful review, we affirm.

On June 2, 2014, A.D.O. ("Mother") and her husband, A.R.O. ("Husband") filed petitions to involuntarily terminate Father's parental rights to Children. In the petitions, Mother alleged that Husband had been a part of Children's lives since 2006 and that Mother and Husband married in April 2009. Mother further alleged that Father had not seen Children since 2008 or 2009 and that Father had not performed parental duties. On August 15, 2014, Mother and Husband filed a petition for adoption, indicating Husband's intent to adopt Children.

The trial court held a hearing on the petitions on January 27, 2014. Mother testified that she has four children: an eighteen-year-old daughter, a seven-year-old son with Husband, and Children. Notes of Testimony ("N.T."), 1/27/2014, at 7-8. Children do well in school and get mostly As. *Id.* at 10-11. Husband acts as a father to Children. *Id.* at 27. He prepares meals, teaches them, assists with extracurricular activities, and transports Children to events. *Id.* at 12. Husband has been involved with Children since they were four and two years old. *Id.* at 13.

Mother testified that she was living with Father when Am.G.A. was born. Between Children's births, Father was incarcerated and he was no longer living with Mother when Ag.G.A. was born. *Id.* at 13-15. Mother testified that she or Father's mother took Children to visit with Father while he was incarcerated and that Father sent letters to Mother that sometimes included pictures for Children. *Id.* at 15, 31. When Father was released from prison in 2008, Mother and Father reached a custody agreement that

included provisions that Father was not to drink alcohol around Children or drive with Children in the car. These provisions stemmed from Mother's concerns after Father was convicted of driving under the influence of alcohol. *Id.* at 16. Father violated these provisions after a few visits. Therefore, visitation stopped until Mother began to drive Children to see Father at the barbershop where he worked. Visitation stopped again when Father went back to prison. *Id.* at 17.

Father was released again in 2011. Mother testified that Father petitioned to modify custody and that she and Father agreed that visitation could begin after Father and Children attended counseling. *Id.* at 17-19. Mother took Children to the first appointment with the counselor, but Father never attended any of his sessions. *Id.* at 20. Mother testified that she did not hear from Father again until he was released from prison in 2014. *Id.* at 20. Father had Mother's phone number during this period, but did not call. *Id.* at 42. After Father filed a petition to modify custody in 2014, Mother decided to file the instant petition to terminate Father's parental rights because she was concerned that Children were being hurt by Father's behavior and instability. *Id.* at 21-23.

Husband testified that he has a father/son relationship with Children. He plays with them and supports them in their activities. *Id.* at 46. Husband wants to adopt Children and to continue to support them both financially and emotionally. *Id.* at 54-55, 56-57. Husband met Father twice when Father was picking up Children for visits in 2008. *Id.* at 47-48.

- 3 -

Husband testified that, in 2009, he wrote a letter to Father, telling him to stop sending letters to Mother. Father had been writing to Mother, not Children, and Husband felt the letters were an attempt to control Mother. Therefore, Husband wanted Father to stop. *Id.* at 49-50.

Father testified that he loves his sons and wants to see them. *Id.* at 72. Father admitted that he had not seen or had phone contact with Children since 2008, but claimed that it was because Mother prohibited contact. *Id.* at 73. Father testified that he did not have Mother's phone number so he could not call Children. *Id.* at 69. Father testified that Mother or Husband called the prison to stop him from writing letters and that the captain at the prison told Father not to send letters unless they were addressed to Children. *Id.* at 74. Father testified that he did not attend the counseling in 2011 because he was incarcerated for a probation violation before he could go to an appointment. *Id.* at 79.

Father's mother, H.L. ("Grandmother"), testified that she took Children to visit Father in prison from 2006 through 2008 and then, when he was released, she would transport Children to the barbershop to see Father. *Id.* at 104-05. Grandmother believed that Father had a loving relationship with Children and that he would play and watch television with them. *Id.* at 105-06. Grandmother testified that Children had not seen Father since 2008. *Id.* at 106.

The guardian ad litem ("GAL") testified that Children are happy and thriving in their home with Mother and Husband and that they are heavily

involved in the community. *Id.* at 115. Children told the GAL that Mother and Husband support and help them with school and activities. The GAL believed that Husband, despite having a criminal record and a struggle with addiction, posed no danger to Children and that Husband has maintained stability and has been sober for eleven years. Husband was a strong role model for Children. Children considered his family to be theirs. *Id.* at 116. Children were very enthusiastic about being adopted by Husband. *Id.* at 117. The GAL was concerned about Father's instability and inability to perform parental duties due to his alcohol problem and repeated incarcerations. *Id.* at 117. The GAL was "particularly concerned about the impact of [Father's] continued and consistent presence on these children particularly because of the very emotional reaction that I got from [Ag.G.A.]."[1] *Id.*

Following the hearing, on February 26, 2015, the trial court found that Father had refused or failed to perform parental duties for the six months preceding the filing of the petition to terminate parental rights. Therefore, the trial court issued decrees terminating Father's parental rights. On March 18, 2015, Father filed a notice of appeal in each case and included a concise statement of errors complained of on appeal as required by Pa.R.A.P.

---

[1] When asked about the adoption, Ag.G.A. cried and stated that he never felt like he had a "real dad" and that if Husband adopted him, Ag.G.A. would have a real dad. *Id.*

1925(a)(2)(i) and (b). On March 30, 2015, the trial court issued a Pa.R.A.P. 1925(a) statement, in which the court indicated that it was relying upon the opinion filed with its February 26, 2015 decree.

Father raises one issue for our review: "Whether the Court erred in determin[ing Mother] established by clear and convincing evidence the statutory grounds for involuntary termination of parental rights was met pursuant to 23 Pa.C.S.A. § 2511(A)(1)?" Father's Brief at 8.

Our standard of review is well-settled:

[O]ur standard of review is limited to determining whether the order of the trial court is supported by competent evidence. . . . We have always been deferential to the trial court as the fact finder, as the determiner of the credibility of witnesses, and as the sole and final arbiter of all conflict in the evidence.

*In re I.J.*, 972 A.2d 5, 8-9 (Pa. Super. 2009) (quoting *In re S.D.T., Jr.*, 934 A.2d 703, 705-06 (Pa. Super. 2007)).

Termination of parental rights is governed by statute, which provides in pertinent part as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). The party seeking to terminate a parent's rights must prove that the parent's conduct satisfies one of the statutory grounds

listed in subsection 2511(a). Clear and convincing evidence is required. *I.J.*, 972 A.2d at 10.

The trial court found that Mother satisfied the requirement to prove that Father's rights should be terminated pursuant to subsection 2511(a)(1). That section requires that a parent demonstrate "a settled purpose to relinquish parental claim to a child or fail[] to perform parental duties for at least six months prior to the filing of the termination petition." *Id.* While the six months prior to the petition is the most critical, the court should consider the entire history of the case. *Id.* This Court has described parental duties as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his . . . ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. **Parental rights are not preserved by waiting for a more**

> **suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.**

*In re Z.P.*, 994 A.2d 1108, 1118-19 (Pa. Super. 2010) (modifications and emphasis in original).

With regard to the discharge of parental duties by incarcerated parents, we have said:

> [T]the fact of incarceration does not, in itself, provide grounds for the termination of parental rights. However, a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his . . . child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his . . . children.
>
> Where a non-custodial parent is facing termination of his . . . parental rights, the court must consider the non[-]custodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the noncustodial parent and his . . . child. Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

*In re Z.P.*, 994 A.2d at 1120 (ellipses in original).

Instantly, there is no evidence that Father has discharged any parental duties since 2008. By his own admission, Father has not seen Children since 2008. He has not written letters to Children or sent them cards or gifts despite knowing Mother's address. Husband admitted that he asked Father to stop writing to Mother. Even if Husband spoke with the prison, which

Husband denied, Father testified that he was told he could still write to Children. Although there was some dispute whether Father had Mother's phone number, there is no evidence that he attempted to call Children or to get Mother's phone number if he did not have it. While Father filed petitions to modify custody, he was unable to follow the agreed-upon provisions in 2008 and did not follow through with counseling in 2011. There is simply no evidence that Father exerted any effort or attempted to maintain a place of importance in Children's lives. Father was incarcerated during some of this time, but there is no evidence that he used all available resources to maintain contact with Children as we have required. Father suggested that Mother and Husband placed obstacles in his path, but Father did not make a concerted effort to overcome any such obstacles. Father did not take affirmative action to maintain a relationship with Children. Therefore, the trial court did not abuse its discretion in finding that Mother met her burden of proof.

> As a final note, we must point out that:
>
> Under section 2511, the trial court must engage in a bifurcated process. The initial focus is on the conduct of the parent. . . . If the trial court determines that the parent's conduct warrants termination under section 2511(a), then it must engage in an analysis of the best interests of the child [] under section 2511(b), taking into primary consideration the developmental, physical, and emotional needs of the child.

*I.J.*, 972 A.2d at 10.

Here, the trial court failed entirely to address Children's best interests in its February 26, 2015 opinion and decree. While some evidence was presented regarding Children's needs and interests, the trial court made no findings that termination best served those interests. However, Father has not raised this issue in his question presented or in his brief.[2] Therefore, this issue is not before us and we may not raise it *sua sponte*. **See In re R.N.J.**, 985 A.2d 273, 277 n.6 (Pa. Super. 2009) (stating with regard to a failure to challenge a trial court's section 2511(a) determination that the "Superior Court may not, with limited exceptions for jurisdictional issues, *sua sponte* address issues not raised by parties").

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2015

---

[2]    Father included a challenge to the trial court's section 2511(b) determination in his concise statement. However, by not including the issue in his brief, Father has abandoned the issue. **See, e.g.**, **Eiser v. Brown & Williamson Tobacco Corp.**, 938 A.2d 417, 424 (Pa. 2007) (issues raised in concise statement, but not included in statement of questions presented were abandoned).