**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.N.-I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.I., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 75 EDA 2024 |

Appeal from the Order Entered December 5, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000912-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: G.N.-I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.I., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 77 EDA 2024 |

Appeal from the Decree Entered December 5, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000662-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: V.N.-I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.I., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 78 EDA 2024 |

Appeal from the Order Entered December 5, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001186-2021

IN THE INTEREST OF: V.N.-I., A
MINOR

APPEAL OF: M.I., FATHER

:   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:   No. 79 EDA 2024

Appeal from the Decree Entered December 5, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000660-2022

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED JUNE 28, 2024**

M.I. ("Father") appeals from the decrees involuntarily terminating his parental rights to his son, G.N.-I. (born in August 2020), and his daughter, V.N.-I. (born in November 2021) (collectively, "Children"), and the orders changing Children's permanency goals from reunification to adoption.[1] Upon careful review, we affirm the termination decrees and dismiss the appeals from the goal change orders as moot.

The trial court recounted the factual and procedural history of this matter as follows:

> The family has been known to the Department of Human Services (["]DHS["]) since 2013 and was supervised by Community Umbrella Agency (["]CUA["]). . . .

---

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decrees entered on the same date, the trial court also involuntarily terminated the parental rights of Children's mother, K.N. ("Mother") (collectively with Father, "Parents"). Mother did not participate in the instant appeal or file a separate appeal.

- 2 -

[Parents] have a history of abusing illicit substances and have not consistently engaged in court-ordered drug and alcohol or mental health treatment. [Parents] also lack stabile housing and have a history of domestic violence. . . .

On August 26, 2020, DHS received a [General Protective Services ("GPS")] report that Mother had delivered a child, G.N.-I., [earlier that month]. There were no health concerns for G.N.-I. at the time. The report stated that [Parents] had unstable and inappropriate housing and a history of domestic violence. Mother has a history of substance abuse and mental health issues for which she was not engaging in treatment. . . .

DHS obtained an order of protective custody (["]OPC["]) for G.N.-I. on August 28, 2020, and placed him in the care of Father's sister, V.I.

On August 31, 2020, a shelter care hearing was held for G.N.-I. The court lifted the OPC and ordered that G.N.-I.'s temporary commitment to DHS was to stand. G.N.-I. was to continue residing with V.I. [Parents] were permitted visitation supervised by V.I.

* * * *

At [an] adjudicatory hearing held on November 13, 2020, the court ordered that G.N.-I. be adjudicated dependent; that he be returned to the care of Mother in the mother/baby drug and alcohol treatment program . . .; and that DHS provide supervision. Father was allowed supervised visitation. . ..

* * * *

On June 8, 2021, DHS received a GPS report regarding a fatality.[2] The report stated that on June 2, 2021, [Children's] two-year-old paternal cousin, C.N., and other paternal family members were present at [Parent's] home when C.N. ingested fentanyl and cocaine and died. The medical examiner ruled C.N.'s death a homicide as it was determined the cause of death was a drug overdose. On June 4, 2021, DHS instructed [Parents] to

_____

[2] At this time, G.N.-I. was living with Parents.

- 3 -

submit to drug screens. . . . Father refused to submit to the drug screen. DHS learned C.N. had been in [Parent's] home on June 1, 2021, and June 2, 2021. DHS obtained an OPC for G.N.-I. on June 8, 2021, and placed him in a . . . foster home.

On June 9, 2021, a shelter care hearing was held for G.N.-I. The OPC was lifted and his temporary commitment to DHS was ordered to stand. [Parents] were permitted supervised visitation at the agency. The court ordered [Parents] to the [Clinical Evaluation Unit ("CEU")] for forthwith drug and alcohol screens.

On September 14, 2021, a permanency review hearing was held for G.N.-I. The court found that [Parents] were minimally compliant with the permanency plan[,] . . . were non-compliant with the [Single Case Plan ("SCP")] and court-ordered objectives and recommendations[,] and were non-compliant with their visitation schedule. The court discharged G.N.-I.'s temporary commitment and fully committed him to DHS. . . . The [court] ordered DHS to obtain an OPC for [Parent's] unborn child when appropriate.

On November 9, 2021, DHS received a GPS report that Mother had given birth to V.N.-I . . . .. Father was identified as [V.N.-I.'s] biological father. . . .

On November 15, 2021, DHS obtained an OPC for V.N.-I. and placed her in foster care with G.N.-I. with the same [foster care] caregiver . . . ..

\* \* \* \*

On November 21, 2021, an adjudicatory hearing was held for V.N.-I . . . .. The court discharged V.N.-I.'s temporary commitment to DHS, adjudicated her a dependent child, and fully committed her to DHS. . . ..

Trial Court Opinion, 3/19/24, at 2-6 (citations to the record and unnecessary capitalization omitted, footnote added).

In furtherance of Children's permanency goal of reunification, Father was required to complete the following goals as part of his case plan

objectives: (1) submit to the CEU for random drug screens and a dual diagnosis assessment; (2) secure appropriate housing and permit CUA to complete a home assessment; (3) secure employment and provide verification to CUA; (4) attend visitation with Children; and (5) enroll in Achieving Reunification Center ("ARC") for parenting, anger management, housing, employment, and domestic violence classes. *See* N.T., 7/14/23, at 36-38.

Aside from completing ARC classes for domestic violence, parenting, and anger management, Father largely failed to accomplish his objectives. Primarily, he never engaged in a drug treatment program, and tested positive for cocaine on various occasions during Children's dependency. *See* N.T., 5/22/23, at 111-12; *see also* N.T., 7/14/23, at 51-52. Further, Father did not obtain appropriate housing or provide proof that he acquired employment. *See* N.T., 12/5/23, at 63, 87. Father attended approximately half the visits with Children that he was offered, but CUA reported that Father was "falling asleep" during the visits. N.T., 5/22/23, at 63-64. CUA also reported that Father refused to change Children's diapers, as he maintained that it was "[Mother's] job." *Id*. at 63.

In December 2022, DHS filed petitions seeking the involuntary termination of Father's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, and separate petitions to change Children's permanency goals from reunification to adoption. The trial court conducted evidentiary hearings on May 22, 2023, July 14, 2023,

and December 5, 2023. Children were represented by a guardian *ad litem* ("GAL").[3] At the final hearing, Father was represented by counsel and testified on his own behalf.[4] DHS adduced the testimony of: foster mother, M.D. ("Foster Mother"); the CUA visitation specialist, Jasmine Brown; the CEU clinical evaluator, Katherine Prieto-Celis; and the CUA case manager, Nicole Edward-Shaw.[5]

By decrees dated and entered December 5, 2023, the trial court involuntarily terminated Father's parental rights pursuant to section 2511(a)(1), (2), (5), (8), and (b). In addition, by orders entered the same date, the court changed Children's permanency goals from reunification to adoption. Father timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b),

---

[3] Insofar as Children were two and three years old, respectively, at the conclusion of the involuntary termination proceedings and incapable of articulating a well-settled preference with respect to termination, we determine that Children's rights to legal counsel pursuant to 23 Pa.C.S.A. § 2313(a) is satisfied. **See In re T.S.**, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that if a child is "too young to be able to express a preference as to the outcome of the proceedings," there is no conflict between a child's legal and best interests, and a child's section 2313(a) right to counsel is satisfied by an attorney serving as GAL who represents the attorney-GAL's view of the child's best interests); **see also** 23 Pa.C.S.A. § 2313(a). At the close of the final hearing, Children's GAL argued in favor of involuntarily terminating Father's parental rights. **See** N.T., 12/5/23, at 98. The GAL did not file a brief on appeal.

[4] Father did not appear for the first two hearings.

[5] DHS also recalled Ms. Edward-Shaw for rebuttal testimony.

and the trial court filed an opinion pursuant to Rule 1925(a).  This Court

consolidated Father's appeals *sua sponte*.

Father presents the following issues for our review:

1. Whether the [trial] court erred in terminating the parental rights of . . . Father.

2. Whether the trial court erred in abusing its discretion and committed legal error in terminating Father's parental rights under 23 Pa.C.S.A. § 2511(b) because [DHS] did not present competent evidence regarding the nature of the bond between [Father] and [C]hildren in order to assess the best interest[s] of the [C]hildren.

3. Whether the errors committed by the [trial] court below deprived . . . Father . . . of his rights to due process and equal protection under the law.

4. Whether the [trial] court erred in changing the goal to adoption.

Father's Brief at 3 (issues reordered for ease of disposition, unnecessary

capitalization omitted).[6]

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether

_____

[6] We note with disapproval certain deficiencies related to Father's brief. Specifically, he does not provide distinct headings that comport directly with the four issues he raised in his statement of questions involved.  **See** Pa.R.A.P. 2119(a) (providing that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"); **see also** Pa.R.A.P. 2101 (providing that, if the defects in the brief of the appellant are substantial, the appeal or other matter may be quashed or dismissed).  However, as we are able to discern the issues raised and related arguments, we decline to quash or dismiss.

the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by section 2511, which necessitates a bifurcated analysis focusing initially upon the eleven enumerated grounds of parental conduct that may warrant termination under section 2511(a). *See id*. at 830. If the court determines that a petitioner has established grounds for termination under at least one of these subsections by clear and convincing evidence, the court must then assess the

petition under section 2511(b), which focuses primarily upon the child's developmental, physical, and emotional needs and welfare. ***See id***.; ***see also*** 23 Pa.C.S.A. § 2511(b). This Court need only agree with the trial court's decision as to any one subsection of section 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In the case *sub judice*, the trial court terminated Father's parental rights to Children pursuant to section 2511(a)(1), (2), (5), (8), and (b). As we need only agree with the trial court as to one subsection of section 2511(a), we confine our analysis to the court's determination pursuant to section 2511(a)(8), as well as its determination under subsection (b), which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> * * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 9 -

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).[7]

In order to satisfy section 2511(a)(8), the petitioner must prove by clear and convincing evidence that: (1) the child has been removed from the parent's care for at least twelve months; (2) the conditions which led to the removal or placement still exist; and (3) the termination of parental rights would best serve the needs and welfare of the child. *See In re J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018). Furthermore, termination pursuant to section 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal or placement of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). Rather, our inquiry is focused upon whether the conditions have been remedied such that

_____

[7] Based on our disposition, we need not consider either Father's claims or the trial court's determinations regarding subsections (a)(1) and (2). *See In re B.L.W.*, 843 A.2d at 384. In his brief, Father does not address the trial court's determinations under subsections (a)(5) and (8). Thus, Father has waived any claim regarding these subsections, and we could affirm the decrees pursuant to section 2511(a) on this basis. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011). Nonetheless, we decline to find waiver, and will instead analyze the decrees under section 2511(a)(8) to the extent that Father asserts that the conditions which led to Children's placement have been remedied.

reunification of parent and child is imminent at the time of the hearing. ***See***

***In re I.J.***, 972 A.2d 5, 11 (Pa. Super. 2009).

Father contends that the conditions which led to Children's removal have been remedied. ***See*** Father's Brief at 10. Father argues that he obtained employment at Children's Hospital of Philadelphia ("CHOP"), completed an ARC anger management course, and submitted to requested drug screens. ***See id***. at 9. Father asserts that he obtained appropriate housing and informed CUA, but no representative came to assess his housing. ***See id***. Father also baldly asserts that DHS did not make reasonable efforts towards reunification by not assessing Father's home and, as best we can discern, stopping supervised visitation.

In concluding that DHS satisfied section 2511(a)(8), the trial court concluded that Father failed to remedy the conditions that brought Children into foster care, as follows:

> . . . The record and testimony presented at the multi-day termination of parental rights hearing demonstrated . . . Father's ongoing inability to provide care for or control of . . . Children. [Father's] failure to remedy the conditions that brought the Children into care indicated a continuing disregard of [his] parental duties. Specifically, Father failed to secure suitable housing, provide employment verification, attend drug treatment, and regularly attend visits with the Children. The Children were adjudicated dependent in . . . 2021. Since then, Father refused, or proved unable, to address his substance abuse problems and provided multiple drug screens that were positive for cocaine. This was despite constant recommendations from CUA and the trial court to do so. . . .
>
> . . . Ms. Edward-Shaw testified that Father failed to secure housing as was repeatedly ordered by the Court and made an

- 11 -

objective of his SCP. She also stated that Father failed to achieve the objective of securing employment and providing verification to CUA. She testified that Father recently claimed that he was employed . . . [but] never provided any type of proof of this claimed employment to her. Ms. Edward-Shaw testified that Father has ongoing issues with drugs and alcohol [and] was referred to drug treatment throughout the history of this case[,] but never followed up or attended any treatment.

Katherine Prieto Celis[, who] is employed by the Public Health Management Corporation[,] . . . testified that the CEU referred Father to the Consortium drug and alcohol program[, but] noted that he provided multiple drug screens that were positive for cocaine and marijuana.

Jasmine Brown testified that she is employed as a visitation coach by CUA and that she supervised . . . Father's visitation with the Children from approximately May 29, 2022[,] to February 17, 2023. During this time period, Father attended only thirty-two out of sixty-eight visits with the Children. [Ms. Brown] stated that . . . Father's visitation plan was eventually closed out after [he] missed sixteen consecutive visits.

Ms. Brown made several observations of Father during the visits he attended. She noted that Father refused to change the Children'[s] soiled diapers during the visits and stated that doing so was not his job—it was Mother's. [Ms. Brown] also stated that there was a recurring issue of Father falling asleep during visits. She recalled having to wake him up on one occasion when he fell asleep while he was feeding V.N.-I. During another visit at which he fell asleep in early 2023, Father told Ms. Brown that he was tired because he did not have housing . . .. Ms. Brown stated that when Father was not sleeping, he "kind of just sat there" during the visits.

* * * *

Based upon the testimony at the termination of parental rights hearing as well as the documents in evidence, the trial court found clear and convincing evidence to terminate . . . Father's parental rights pursuant to [section] 2511(a), (1), (2), (5), and (8) as Father was unable to remedy the conditions that brought Children into care.

Trial Court Opinion, 3/19/24, at 12-15, 16 (citations to the record omitted).

Our review of the certified record confirms that DHS introduced clear and convincing evidence in support of termination pursuant to section 2511(a)(8). Contrary to Father's assertions, the evidence of record demonstrates that Father has not remedied the conditions that led to Children's placement. Primarily, at the time of the hearings, Father had not addressed his substance abuse issues. Ms. Edward-Shaw testified that Father initially refused to be drug tested. *See* N.T., 7/14/23, at 51. When he did submit to testing, he tested positive for cocaine. *See*, N.T., 5/22/23, at 111-12. Due to his ongoing substance abuse issues, CEU referred Father to the Consortium drug and alcohol program. *See id.* at 110. However, Father never attended any treatment throughout the duration of the case. *See id*. at 51-52; *see also* N.T., 12/5/23, at 64.

Father also failed to obtain suitable housing. *See* N.T., 12/5/23, at 63. Ms. Edward-Shaw testified that Father provided her with his current address, but she did not assess the home because Parents informed her that the home was not appropriate for Children. *See id*. Father claimed he was working; however, Ms. Edward-Shaw testified that she never received any proof of employment. *See id*. at 43; *see also* N.T., 7/14/23, at 37.

With regard to the final prong of section 2511(a)(8), that termination would best serve the needs and welfare of Children, there is no indication in the record that Father and Children share a bond. Indeed, G.N.-I. was

removed from Father's care in June 2021, when he was just nine months old, and V.N.-I. was removed from father's care when she was a newborn, following her birth in November 2021. In addition, Father did not consistently participate in supervised visitation. Due to his inconsistent attendance, CUA ended supervised visitation in February 2023. *See* N.T., 5/22/23, at 70. When Father did attend visitations with Children, he did not demonstrate parenting skills necessary to care for Children's needs. For instance, Ms. Brown testified that Father would often fall asleep and refuse to change Children's diapers. *See id*. at 63-64. Ms. Brown further testified that when Father was not sleeping, he "kind of just sits there." *See id*. at 81.

Accordingly, as the record supports the trial court's determination that Children had been removed from Father's care in excess of twelve months; the conditions which led to Children's removal continued to exist; and termination would best serve the needs and welfare of Children, we discern no abuse of discretion by the court in finding that clear and convincing evidence existed to terminate Father's parental rights pursuant to section 2511(a)(8).[8]

_____

[8] Regarding Father's argument that DHS failed to make reasonable efforts towards reunification, his argument fails pursuant to *In the Interest of D.C.D.*, 105 A.3d 662, 672 (Pa. 2014), wherein our Supreme Court held that, with respect to section 2511, "[n]either subsection (a) nor (b) requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights." *Id*. Moreover, even if the trial court was required to consider the efforts made by DHS, we would conclude that DHS provided ample
*(Footnote Continued Next Page)*

Having found sufficient grounds for termination pursuant to section 2511(a)(8), we now turn to section 2511(b), which affords primary consideration to the developmental, physical, and emotional needs and welfare of the child. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "Notably, courts should consider the matter from the child's perspective, placing [their] developmental, physical, and emotional needs and welfare above concerns for the parent." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023). This determination "should not be applied mechanically," but "must be made on a case-by-case basis," wherein "the court must determine each child's specific needs." *Id*. at 1106. Accordingly, there is no exhaustive list of factors that must be considered in this context. *Id*. at 1113 n.28.

As part of its section 2511(b) assessment, the trial court must examine whether a bond exists between the child and the biological parent, who is the subject of the termination action. *K.T.*, 296 A.3d at 1106. If the trial court finds that such a bond exists, the trial court must then analyze that bond. *Id*. Emphasizing the importance of permanency and stability, the trial court "must determine whether the trauma caused by breaking the parent-child bond is outweighed by the benefit of moving the child toward a permanent home." *Id*. at 1107 (citation and brackets omitted). A trial court, in the context of a

opportunities to Father to overcome his parenting deficits and reunify with Children.

child's need for permanency, stability, and intangibles, such as love, comfort, and security, must consider whether the parent-child bond is "necessary and beneficial" to the child. *Id*. at 1109. As the *K.T.* Court explained:

> Severance of a "necessary and beneficial" bond would predictably cause more than the "adverse" impact that, unfortunately, may occur whenever a bond is present. By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause "extreme emotional consequences" or significant, irreparable harm.

*Id*. at 1109-110 (some citations omitted).

As such, the *K.T.* Court distinguished "extreme emotional consequences" from an "adverse impact" to the child when parental rights are terminated. *Id*. at 1111. Specifically, the Court cautioned that a trial court "must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child." *Id*. at 1114. The *K.T.* Court concluded, "to grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." *Id*.

The evaluation of a child's bonds is not always an easy task. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). Nevertheless, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition."

***T.S.M.***, 71 A.3d at 267. In weighing the bond considerations pursuant to section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id***. at 269. As this Court has observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id***.

Moreover, in reiterating that the parental bond is only one part of the analysis, the ***K.T.*** Court held that the "[s]ection 2511(b) inquiry must also include consideration . . . [of] certain evidence ***if it is present in the record***." ***Id***. at 1113, n.28 (emphasis in original). The Court emphasized, however, that there is not an exhaustive list for consideration under all section 2511(b) analyses. ***Id***. Rather, the ***K.T.*** Court found that the particular facts of each case determine the factors to be considered. ***Id***.

The ***K.T.*** Court recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the section 2511(b) analysis." ***K.T.***, 296 A.3d at 1109. For instance, if relevant in a case, a trial court "can equally emphasize the safety needs of the child" in its analysis under section 2511(b). ***See In re M.M.***, 106 A.3d 114, 118 (Pa. Super. 2014).

As best we can discern from his brief, Father argues that DHS failed to provide clear and convincing evidence to terminate his parental rights pursuant to section 2511(b). *See* Father's Brief at 11-12. He contends that he was not given the opportunity to properly bond with Children because he was not afforded unsupervised visitation. *See id*. at 12. Father asserts that termination does not best serve the needs and welfare of Children because he cooperated with CUA, visited Children, maintained stable housing, completed ARC courses, and did not intend to relinquish his rights to Children. *See id*.

In determining that clear and convincing evidence existed to terminate Father's parental rights pursuant to section 2511(b), the trial court stated the following.

> . . . Evidence presented at the hearing indicated that the Children and [Foster Mother] shared a parental bond, and that the [Foster Mother] was providing for the Children's daily[,] emotional[,] and physical needs. In contrast, the trial court found that Father lacked the capacity to address his Children's basic emotion and physical needs.

> * * * *

> [Foster Mother] testified that G.N.-I. has resided with her since he was nine months old[,] and V.N.-l. was placed with her when she was discharged from the hospital after being born. [Foster Mother] testified that both Children are doing well in her care and that she takes care of their daily and medical needs. [Foster Mother] noted that the Children are bonded with her twin fourteen-year-old biological children. [Foster Mother] testified that despite having her phone number, Father has never called her to check on the Children's wellbeing. She informed the Court that G.N.-I. has difficulty speaking and that she has arranged for him to see a speech therapist. The court was impressed by [Foster Mother's] love for the Children and the obvious effort she is putting forth to care for them.

- 18 -

Ms. Edward-Shaw testified that the Children's [Foster Mother] has provided them a loving home. She stated that the [Foster Mother] addresses all the Children's daily needs and medical issues. She noted that the Children refer to the [Foster Mother] as "Mom" and are bonded to her and her family. Ms. Edward-Shaw informed the court that she believed it would cause the Children harm if they were removed from the [Foster Mother's] home and that it would not irreparably harm the [C]hildren if . . . Father's parental rights were terminated.

Trial Court Opinion, 3/19/24, at 12-13, 15 (citations to the record and unnecessary capitalization omitted).

Our review of the certified record confirms that DHS introduced clear and convincing evidence in support of termination pursuant to section 2511(a)(b). Although Father argues that he was not provided an opportunity to bond with Children, the record belies his argument. Ms. Brown testified that from May 19, 2022, to November 21, 2022, Father attended twenty-nine of forty-nine visits. *See* N.T., 5/22/23, 55-69. Thereafter, from November 25, 2022, to February 17, 2023, Father only attended three of nineteen visits. *See id*. at 70. Accordingly, instead of expanding visitation, CUA ultimately ceased its supervised visitation in February 2023 due to Father's failure to attend such visitations. *See id*. at 73.

Foster Mother testified that G.N.-I. has been in her care since he was nine months old, and V.N.-I. since she was discharged from the hospital following her birth. *See* N.T., 5/22/23, at 26. Foster Mother would like to adopt Children and reported that Children look to her for comfort and support. *See id*. at 28-30.

Further, there is no evidence in the record that Father and Children share a bond. Therefore, the record support's the trial court's determination that no bond existed between them. **See K.Z.S.**, 946 A.2d at 762-63. Rather, the record supports the trial court's finding that Children share a parental bond with Foster Mother. **See** N.T., 7/14/23, at 14-16, 52.

Accordingly, as the record supports the trial court's determination that termination of Father's parental rights best serves the Children's developmental, physical, and emotional needs and welfare, we discern no abuse of discretion by the court in finding that clear and convincing evidence existed to terminate Father's parental rights pursuant to section 2511(b).

In Father's third issue, he claims that the trial court violated of his constitutional rights to due process and equal protection. Initially, we must determine whether Father preserved this issue for our review. **See** Pa.R.A.P. 302(a) (providing that issues not raised in the trial court are waived and cannot be raised for the first time on appeal). Father has not directed this Court to the place in the record where he raised this issue before the trial court to preserve it for our review. **See** Pa.R.A.P. 2119(e). Moreover, our review of the record discloses no filings by Father raising this issue, nor any argument by Father or his counsel at the December 5, 2023 hearing regarding any perceived violation of his constitutional rights. Additionally, in his appellate brief, Father failed to provide any meaningfully argument related to this issue, or any discussion of pertinent legal authority pertaining to this

issue.  *See* Pa.R.A.P. 2119(a); *see also W.H.*, 25 A.3d at 339 n.3 (holding that, where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived)  Accordingly, even if Father had preserved the issue for our review, it is waived for lack of development.

In his final issue, Father challenges the trial court's decision to change Children's permanency goals from reunification to adoption.  Given our disposition affirming the termination decrees, we deem Father's appeals from the goal change orders moot.  *See In the Interest of A.M.*, 256 A.3d 1263, 1272-73 (Pa. Super. 2021) (holding that the effect of this Court's decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change Child's goal to adoption).

Based on the foregoing, we affirm the decrees terminating Father's parental rights, and dismiss as moot Father's appeals from the orders changing Children's permanency goals from reunification to adoption.

Decrees affirmed.  Appeals from goal change orders dismissed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/28/2024

- 21 -