J-S46031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.G., a Minor, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.M., Mother, | : | |
| | : | |
| Appellant | : | No. 945 EDA 2015 |

Appeal from the Order entered on March 12, 2015
in the Court of Common Pleas of Monroe County,
Orphans' Court Division, No. 6 OCA 2015

BEFORE: MUNDY, OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JULY 29, 2015**

M.M. ("Mother"), the natural mother of J.G.,[1] a son born in October 2013, appeals from the Order granting the Petition filed by Monroe County Children and Youth Services ("CYS") to involuntarily terminate Mother's parental rights pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. *See* 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We affirm.

CYS visited Mother at the hospital on the day J.G. was born based on an open case regarding Mother's other child, and Mother's long history of cocaine use. Upon their release from the hospital, Mother and J.G. stayed with Mother's parents ("Maternal Grandparents"). CYS frequently visited Mother and J.G. throughout October 2013, and reported no concerns. On

---

[1] We note that the natural father's identity is unknown.

November 4, 2013, CYS received a call from J.G.'s maternal grandmother indicating that Mother had left the home, and that she did not know Mother's location. Maternal Grandparents sought CYS's involvement and, as a result, CYS filed a Petition for emergency protective custody. The next day, CYS was granted emergency protective custody over J.G., and he was placed in a kinship foster home with Maternal Grandparents. On November 8, 2013, Mother appeared for a shelter care hearing. After this hearing, Mother tested positive for cocaine, and protective custody of J.G. was sustained.

J.G. was declared dependent at a hearing held on November 15, 2013, which Mother did not attend. Mother did not have any contact with CYS until March 2014.[2] At this time, Mother informed CYS that she was in drug rehabilitation. Mother had her first visit with J.G. in April 2014. However, Mother tested positive for Benzoylecgonine and cocaine at the visit. Throughout 2014, Mother continued to test positive for drugs, and was subsequently discharged from a rehabilitation program due to lack of compliance. CYS filed a Petition requesting a goal change from reunification to termination of parental rights in July 2014. On August 26, 2014, the trial court denied the Petition.

Mother made several attempts at rehabilitation; however, she failed to complete or attend follow-up treatment and continued to test positive for drugs. Also, Mother continually failed to appear at permanency review

_____

[2] We note that in March 2014, J.G. moved in with his current kinship foster parents, his maternal cousins.

hearings and visits with J.G. Subsequently, CYS filed second Petition to terminate Mother's parental rights. On March 12, 2015, the trial court terminated Mother's parental rights with respect to J.G. Mother filed a timely Notice of Appeal, and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement. Thereafter, the trial court issued an Opinion.

On appeal, Mother raises the following questions for our review:

I. Did [CYS] fail to present clear and convincing evidence that termination of [M]other's parental rights served the needs and interests of J.G.?

II. Did [the] trial court err in terminating [M]other's parental rights without clear and convincing evidence that termination of [M]other's parental rights served the needs and interests of J.G.?

Mother's Brief at 6 (numbers added).[3]

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).

---

[3] Mother has presented her similar claims as a single argument in her appellate brief. Thus, we will address her claims together.

- 3 -

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *Id*. "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id*. (citation and quotation marks omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). If competent evidence supports the trial court's findings, "we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2004) (citation omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. "We need only agree with a trial court's decision as to any one subsection of 2511(a), along with 2511(b), in order to affirm the termination of parental rights." *In re D.A.T.*, 91 A.3d 197, 204 (Pa. Super. 2014) (citations and brackets omitted). Therefore, we focus our analysis of the trial court's decision to terminate Mother's parental rights based upon sections 2511(a)(1) and (b), which state the following:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

***

(1) The parents have, for a period of more than six (6) months prior to the filing of this petition, failed to perform their parental duties.

***

**(b) Other considerations.--** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parents to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1) and (b).

To satisfy section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). "[P]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his ability, even in difficult circumstances." *In re*

*Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010). "[P]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with physical and emotional needs." *Id*.

With respect to section 2511(b), a court should consider the bond between mother and child, and whether termination would destroy a beneficial relationship. *Id*. at 1121. When conducting a bonding analysis, courts are not required to use expert testimony and may utilize evaluations of caseworkers. *Id*. Section 2511(b) requires courts to give primary consideration to the developmental, physical and emotional needs and welfare of the child. *In re N.M.B.*, 856 A.2d 847, 855 (Pa. Super. 2004). Further, courts must consider the strength of the emotional bond between child and his or her foster family. *See In re I.J.*, 972 A.2d 5, 13 (Pa. Super. 2009).

Mother contends that the trial court erred in terminating her parental rights, as CYS did not demonstrate by clear and convincing evidence that termination served J.G.'s welfare. Mother's Brief at 13. Mother alleges that her inaction is not sufficient to demonstrate a settled purpose of relinquishment, and that performance of parental duties requires a mere willingness to cooperate with CYS. *Id*. at 14. Mother asserts that her inconsistent visits with J.G. are attributed to her inability to obtain a new driver's license, and that she had no form of transportation to attend the

- 6 -

visits. *Id*. at 15. Mother claims that CYS did not offer services to help her visit J.G. *Id*. Mother concedes that she failed multiple drug tests throughout J.G.'s dependency, but argues that she has made attempts at rehabilitation. *Id*. Mother also contends that her parental rights should not be terminated because CYS failed to prove that she had no bond with J.G. *Id*. at 15, 18-19.

Our review of the record discloses that Mother missed all of the scheduled permanency hearings, and most of the scheduled visits with J.G. during the 17 months that he was in CYS's care. N.T., 3/11/15, at 9, 42-43. Mother testified that her driver's license was suspended, and that she did not have money to take the bus to visits. *Id*. at 42-44. However, J.G.'s CYS caseworker testified that Mother missed multiple visits in order to travel to Virginia and New York. *Id*. at 28-29. J.G.'s caseworker also testified that CYS was unaware of Mother's license suspension, and Mother did not request any assistance. *Id*. at 39. Moreover, J.G.'s caseworker stated that Mother failed the majority of drug tests administered by CYS, and failed to attend J.G.'s doctor appointments. *Id*. at 26-27. J.G.'s caseworker noted that Mother failed to complete any drug, alcohol, or parenting classes, and failed to participate in any mental health treatment suggested by CYS. *Id*. at 33. J.G.'s caseworker testified that J.G. has developed a meaningful relationship with his foster family, and that J.G. has shown an emotional attachment towards his foster family. *Id*. at 34, 44. Also, J.G.'s foster family tends to

his medical needs, is compliant with all of CYS's requests and wishes to adopt J.G. *Id*. at 34-35.

Based on the totality of these circumstances, Mother has failed to perform her parental duties for at least six months prior to the filing of the second Petition for termination. *See In re of K.Z.S.*, 946 A.2d 753, 756-57 (Pa. Super. 2008) (holding that termination under section 2511(a) was proper where mother consistently missed visits due to lack of transportation, and where mother was addicted to cocaine); *see also In the Interest of Lilley*, 719 A.2d 327, 328 (Pa. Super. 1998) (holding that termination under section 2511(a)(1) was proper where mother failed to comply with the goals set by CYS and other support agencies).

Further, there is no evidence of a bond between Mother and J.G. *See K.Z.S.*, 946 A.2d 762-63 (stating that "where there is no evidence of any bond between parent and child, it is reasonable to infer no bond exists"). Indeed, CYS presented evidence that J.G. has bonded with his foster parents and that they best serve his welfare interests. *See In re P.Z.*, 113 A.3d 840, 852 (Pa. Super. 2015) (stating that termination of parental rights best served the child's needs and welfare where a supportive and secure environment existed with a new family); *see also In re J.L.C.*, 837 A.2d 1247, 1250 (Pa. Super. 2003) (stating that termination of parental rights is proper where the child has formed a bond with the foster parents, and where the child has lived with the foster parents for more than half of his

life). Thus, the trial court did not abuse its discretion in terminating Mother's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2015