J-A10013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2907 EDA 2022 |

Appeal from the Order Entered October 26, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000440-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2908 EDA 2022 |

Appeal from the Decree Entered October 26, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000402-2022

BEFORE:   PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED JUNE 07, 2023**

D.M. ("Mother"), appeals from the October 26, 2022 decree granting the

petition filed by the Philadelphia Department of Human Services ("DHS") to

involuntarily terminate her parental rights to her daughter, M.M. ("Child"),

_____

[*] Retired Senior Judge assigned to the Superior Court.

born in December 2020.[1]  Mother also appeals from the October 26, 2022 order changing Child's permanency goal from reunification to adoption. After careful review, we affirm the decree and dismiss the appeal from the goal change order as moot.

The record reveals that in December 2020, Child was born prematurely at approximately twenty-nine weeks of gestation. ***See*** N.T., 10/26/2022, at 6. Prior to birth, Mother admitted to abusing, and thereby exposing Child to, phenylcyclohexyl piperidine ("PCP"), cocaine, amphetamines, and benzodiazepines. ***See id.*** As a result, Child remained hospitalized for approximately three months. ***See id.*** at 7. Upon discharge, Child was placed in a kinship foster home with Mother's cousin ("foster parent"). ***See id.*** DHS filed a dependency petition and on May 19, 2021, Child was adjudicated dependent.

In furtherance of Child's permanency goal of reunification, Mother was required to comply with the following single case plan ("SCP") objectives: (1) participate in visitation with Child; (2) attend a drug and alcohol program and therapy; (3) provide random drug screens to the Community Umbrella Agency ("CUA"); (4) comply with CUA case management directives; (5) attend Child's

---

[1] By separate decrees entered on the same date, the trial court involuntarily terminated the parental rights of putative father, D.R., and any unknown father. Neither D.R. nor any unknown father have filed a notice of appeal or participated in the instant appeals.

medical appointments; (6) sign consents and releases; and (7) complete employment and parenting classes. *See id.* at 8-9.

Mother largely failed to complete these objectives. Primarily, Mother was inconsistent in visiting Child and never progressed beyond supervised visitation. *See id.* at 9-11. Additionally, Mother did not complete a drug and alcohol program and was ultimately discharged from the program she was attending in March 2022 for lack of participation.[2] *See id.* at 22. Relatedly, Mother tested positive for PCP in February 2022 and several of her other drug screens were rejected due to unexplained abnormalities. *See id.* at 19. Mother also failed to complete her parenting classes due to being discharged for aggressive and violent behavior towards staff and foster parent. *See id.* at 14.

On June 29, 2022, DHS filed for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) and a separate petition to change Child's permanency goal from reunification to adoption. The trial court conducted an evidentiary hearing on October 26, 2022, when Child was nearly two years old, wherein she was represented by

---

[2] Mother began another drug and alcohol treatment program in August 2022, approximately two months after DHS filed its petitions to terminate her parental rights and change Child's permanency goal to adoption. *See* N.T., 10/26/2022, at 22.

- 3 -

a guardian *ad litem* ("GAL").[3] Mother was represented by counsel and testified on her own behalf. DHS presented the testimony of Malinda Kline, a CUA case manager.

By decree dated and entered on October 26, 2022, the trial court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). In addition, by order entered the same date, the court changed Child's permanency goal to adoption. Mother filed timely notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court consolidated Mother's appeals *sua sponte* on December 6, 2022.

On appeal, Mother presents the following issues for review:

1. Whether the trial court abused its discretion and erred as a matter of law in terminating [M]other's parental rights under 23 Pa.C.S.[A. §] 2511(a) and (b) because its decision was not supported by competent evidence[?]

2. Whether the trial court abused its discretion and erred as a matter of law in changing the permanency goal to adoption from reunification as there was not competent evidence that it was in the best interests of [Child?]

Mother's Brief at 8.[4]

---

[3] ***See In re T.S.***, 192 A.3d 1080, 1092-93 (Pa. 2018) (If a child is "too young to be able to express a preference as to the outcome of the proceedings[,]" there is no conflict between a child's legal and best interests, and a child's subsection 2313(a) right to counsel is satisfied by an attorney serving as GAL who represents the attorney-GAL's view of the child's best interests.) ; ***See also*** 23 Pa.C.S.A. § 2313(a).

[4] The GAL did not file a brief in this appeal.

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by 23 Pa.C.S.A. § 2511 of the Adoption Act, which necessitates a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination pursuant to Section 2511(a)(1)-(11). *M.E.*, 283

A.3d at 830. If the orphans' court determines that a petitioner has established grounds for termination under at least one of these subsections by "clear and convincing evidence," the court then assesses the petition under Section 2511(b), which focuses primarily upon the child's developmental, physical and emotional needs and welfare. **Id.** at 830 (citation omitted). This Court "need only agree with any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm the termination of parental rights." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citation omitted).

As we ultimately conclude that record supports the trial court's conclusion pursuant to section 2511(a)(8) and (b), we will constrain our analysis to those two subsections, which provide:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the

- 6 -

control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

In order to satisfy Section 2511(a)(8), DHS was required to prove that: (1) Child had been removed from Mother's care for at least 12 months; (2) the conditions which led to the removal or placement still existed; and (3) that termination of Mother's parental rights would best serve the needs and welfare of Child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018). Furthermore, termination pursuant to Section 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal or placement of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). Rather, the relevant inquiry is focused upon whether the at-issue "conditions" have been "remedied" such that "reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). The policy behind this subsection reflects a desire to avoid having children from spending a long time in the foster care system:

> [T]he application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen months,

in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care.

*Id.* at 11-12 (emphasis in original; internal citations omitted).

Finally,

while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).

Mother argues that the trial court abused its discretion because its decision was not supported by competent evidence. *See* Mother's Brief at 8. Specifically, regarding Section 2511(a)(8), Mother contends that she resumed therapy and visitation, and demonstrated stability through her employment, housing, and care of her other son who resides with her. *See id.* at 19-20. Mother also asserts that the case was only active for seventeen months at the time of the hearing and given additional time, she would have alleviated the circumstances that brought Child into care. *See id.* at 20. Finally, she argues that termination of her parental rights was not in Child's best interest because there was evidence that she had a strong bond with Child. *See id.*

Mother's arguments are not persuasive. In determining that DHS provided competent evidence to terminate Mother's parental rights, the trial court observed that DHS had presented credible evidence satisfying all three elements required by subsection (a)(8):

> [Mother] had [seventeen] months to successfully complete drug and alcohol programming. She hasn't done so. She hasn't successfully engaged. The documentation that was produced, including [] documentation from the CEU report, indicates [Mother] was discharged from a treatment program because she failed to participate. [Mother's] attempts to re-engage in treatment starting in August of this year were after the termination petition was filed. And she hasn't demonstrated an ability to be able to correct the circumstances and does not appear any closer to reunification today than she was at the time of placement.
>
> While counsel indicated [Mother] has [] employment and housing, those are not the issues that led to [Child] coming into care. The issues were [Mother's] drug treatment and [Mother] has not availed herself of the programming that's been available to her throughout the life of this case to demonstrate her ability to do anything to correct that situation.
>
> It would best serve the needs of [Child] to terminate parental rights in this case as [Child] is entitled to permanency.

N.T., 10/26/2022, at 82-83.

We discern no abuse of discretion in the trial court's findings. Initially, at the time of the termination hearing, there is no dispute that Child had been removed from Mother's care in excess of the statutory minimum. Turning to whether DHS established that Mother had not remedied the conditions that led to Child's dependency, the trial court heard testimony from CUA case manager, Kline, that Child was adjudicated dependent due to Mother's substance abuse. *See id.* at 6-7. CUA provided Mother with objectives, but Kline testified that she only successfully completed her employment and housing objectives, although Kline noted that she had not received

corroborative pay stubs or any other proof of employment from Mother. *See id.* at 25.

Significantly, Kline stated that Mother did not successfully complete drug and alcohol treatment. *See id.* at 22. The record also reflects that Mother tested positive for PCP in February 2022 and had numerous rejected drug tests. *See id.* at 19. Although Mother resumed treatment, she began the program in August 2022, approximately two months after DHS filed the petition to involuntarily terminate her parental rights. *See id.* at 22. Accordingly, Mother's resumption of treatment is not a relevant consideration. *See* 23 Pa.C.S.A. § 2511(a)(8), (b). Furthermore, Kline questioned Mother's sobriety:

> Q: And have there been any other instances where you've observed [Mother] under the influence of any substances or appearing under the influence of any substances?
>
> A: Over the phone, yes.
>
> Q: Could you tell the court about that?
>
> A: Just when she would call me, she would fall asleep [] mid conversation and almost have like a snoring sound. She often sounds very groggy, very incoherent, slurring her speech, having where she'll say a word and draws the word out -- you know, those behaviors.

*Id.* at 21.

Finally, Mother failed to consistently visit with Child. *See id.* at 10. In April 2022, she was removed from the visitation schedule altogether because she missed three consecutive visits. *See id.* To be re-listed on the visitation

schedule, Mother was required to complete three consecutive visits, but she did not visit Child at all from May to July 2022. ***See id.*** at 10-11, 48. Ultimately, she was not re-listed on the visitation schedule until one week before the evidentiary hearing in October 2022. ***See id.*** at 11.

Viewing this evidence collectively, there is ample evidence to support the trial court's conclusion that the conditions that precipitated Child's removal continue to exist. Therefore, DHS presented sufficient evidence to support the trial court's conclusion that the second requirement of subsection (a)(8) was satisfied.

Regarding the third requirement of subsection (a)(8), our review confirms that the trial court heard sufficient testimony that termination of Mother's parental rights would best serve the needs and welfare of Child. In pertinent part, Kline testified that Child, who was nearly two years old at the time of the hearing, has never resided with Mother. ***See id.*** at 6-7. She also averred that there is no bond between Mother and Child:

> Q: And you said that there's no bond. What leads you to make that determination?
>
> A: [Child] isn't upset at the end of the visits when they separate. She does not ask for [Mother]. [C]hild's barely seen [Mother].

***Id.*** at 29. Concomitantly, the record demonstrates the existence of a parent-child bond between foster parent and Child. ***See id.*** at 33. Moreover, Child is well-cared for by foster parent, who takes Child to medical appointments, loves her, and desires to adopt her. ***See id.***

Based on the foregoing, the trial court was well within its discretion to terminate Mother's parental rights under section 2511(a)(8) because Child had been removed from Mother's care in excess of the 12-month statutory minimum, the conditions which led to Child's removal continue to exist, and termination would best serve the needs and welfare of Child.

Turning to section 2511(b), we are required to "give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S.A. § 2511(b). It is well-established that this inquiry "requires the trial court to consider the nature and status of bond between a parent and child."  *M.E.*, 283 A.3d at 837 (citation omitted). "When examining the effect upon a child of severing a bond, courts must examine whether termination of parental rights will destroy a 'necessary and beneficial relationship,' thereby causing a child to suffer 'extreme emotional consequences.'"  *J.N.M.*, 177 A.3d at 944 (citation omitted). However, the "bond examination" is only one amongst many factors to be considered in assessing the soundness of termination:

> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. In determining needs and welfare, the court may properly consider the effect of the parent's conduct upon the child and consider whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights.

*M.E.*, 283 A.3d at 837 (internal citations omitted). This Court has further stated that "[w]hen conducting a bonding analysis, the court is not required to use expert testimony. [Instead, s]ocial workers and caseworkers can offer evaluations as well." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted).

Mother argues that her parenting school provider, Family School, opined that there was a strong bond between her and Child. *See* Mother's Brief at 21-22. She contends that Kline's opinion that there was no bond was not supported by competent evidence. *See id.* at 22. Mother asserts that a bonding evaluation should have been ordered. *See id.*

The trial court acknowledged Mother's feelings but found that Child is not bonded to Mother:

> And with regard to [Mother], while [she] may feel a bond with [Child], there's been no evidence that [Child] feels any type of bond with [Mother] in this case. Mother [has] had ten visits in the last six months. There's no indication that [Child] has a parent/child bond or looks to [Mother] to meet any of [her] needs throughout the life of this case.

N.T., 10/26/2022, at 84. Further, the trial court found Kline credible, and determined Mother's self-serving testimony was incredible. *See id.* at 78.

The trial court was not required to order a bonding evaluation and heard sufficient testimony from Kline to determine that Mother and Child did not share a parent-child bond. *See Z.P.*, 994 A.2d at 1121. Although Family School reported the existence of a strong bond between Mother and Child, the Family School report is not an expert opinion despite Mother's characterization

and, ultimately, Mother was discharged from Family School for aggressive and violent behavior towards staff and foster parent. *See* N.T., 10/26/2022, at 14. As related previously, Kline stated that Mother and Child did not share a parent-child bond, and the trial court was well within its discretion to rely on her testimony in making its determination. *See Z.P.*, 994 A.2d at 1121. Finally, as stated by Kline, Child shared a parent-child bond with foster parent who meets her needs. *See* N.T., 10/26/2022, at 33. Consequently, Mother's argument regarding Section 2511(b) fails, and the trial court did not abuse its discretion in determining that termination best serves Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

With respect to Mother's second issue regarding the trial court's decision to change Child's permanency goal from reunification to adoption, given our disposition affirming the decree, Mother's appeal from the goal change order is moot. Therefore, we need not review it. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

Based on the foregoing, we affirm the decree terminating Mother's parental rights and dismiss as moot the order changing Child's permanency goal to adoption.

Decree affirmed. Appeal from goal change order dismissed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 6/7/2023*